EXHIBIT A

# MASTER COMMERCIAL MOTOR VEHICLE SECURITY AGREEMENT

Application No.: 247435

Effective Date of this Agreement: January 21, 2016

**LENDER/SECURED PARTY:**
Hitachi Capital America Corp.
800 Connecticut Ave
Norwalk Connecticut 06854

**BORROWER:**
JAMS TRANSPORTATION, INC.
12400 Rojas Dr Trlr 177
El Paso, TX 79928-5218

"I" and "me" means each person or entity who signs this Agreement as a Borrower. If more than one person or entity signs as Borrower, each of them agrees to keep all promises of the Borrower in this Agreement, even if the others do not. "You" means the Lender/Secured Party, identified above, Hitachi Capital America Corp., and shall include any assignee of Hitachi Capital America Corp. who is the holder of this Agreement.

We are entering into this Master Commercial Motor Vehicle Sales Contract and Security Agreement and Schedule No. 1 (the "Agreement") at or prior to the time that we are entering into one or more transactions in which you will be providing financing for my purchase of one or more motor vehicles and my repayment of the financing and any related charges will be secured by a security interest in the purchased motor vehicles and related personal property owned by me. Each financing transaction and the specific security agreement for that transaction will be evidenced by a schedule of debt and collateral ("Schedule") executed by us that explicitly incorporates the provisions of this Agreement and that sets forth the specific terms of that particular financing transaction. Each Schedule shall be given a designated serial number. Except as otherwise expressly agreed by us, no Schedule shall replace any previous Schedule but shall be in addition to all previous Schedules.

Where the provisions of a Schedule conflict with the terms of this Agreement, the provisions of the Schedule shall prevail. Each Schedule shall constitute a complete and separate financing transaction and security agreement, independent of all other Schedules, and without any requirement of being accompanied by an originally executed copy of this Agreement. The terms "Security Agreement," or "this Agreement," when used herein shall refer to this Agreement and all individual Schedules.

One originally executed copy of the Schedule shall be denominated "Originally Executed Copy No. 1 of 1 originally executed copies," and such copy shall be retained by you. If more than one copy of the Schedule is executed by us, all such other copies shall be numbered consecutively with numbers greater than one. Only transfer of possession by you of Originally Executed Copy No. 1 shall be effective for perfecting an interest in such Schedule by possession.

In exchange for the financing being provided by you referenced above and further identified in each Schedule to this Agreement, I agree to the following terms and conditions.

1. **GRANT OF SECURITY INTEREST:** To secure all I owe under this Agreement and all of my promises in this Agreement, I give you a security interest in the collateral. The "collateral" includes the property listed below, along with all improvements and attachments to the property, insurance refunds, replacements, products and proceeds. All vehicles listed on the Schedules (singularly, a "Vehicle," or collectively, the "Vehicles").

2. **OBLIGATIONS SECURED:** The security interest in the collateral secures all debt described in this Agreement and the Schedules and all of my promises under this Agreement, and also secures all debt that I owe you now or in the future under additional financing transactions, loans or otherwise.

3. **PROMISE TO PAY:** I promise to pay the Amount(s) Financed, the Finance Charge(s), and any other charges authorized under this Agreement on the terms and conditions set forth in this Agreement and the Schedules and in accordance with the payment schedules set forth in the Schedules, at your address noted above or at such other address as you may specify from time to time in writing. I understand that the Schedule(s) set forth the timing and amount of the payments due under this Agreement.

4. **OWNERSHIP AND USE OF COLLATERAL:** I own the collateral. I represent, warrant and promise that: the collateral will be used 100% for business and commercial purposes and NOT for personal, family or household purposes; the collateral will be kept in good condition, repair, and appearance; the collateral will be used and operated with care, only by qualified personnel in the regular course of my business; the collateral will not be used illegally; the collateral shall remain personal property and not become part of any real property regardless of the manner of affixation; and the collateral will not be used outside of the Continental United States or removed to any location outside of the Continental United States without your written permission. You may inspect the collateral at all reasonable times and from time to time. The Collateral will not be used outside of the Continental United States. Notwithstanding the prohibition from removing the Collateral from the United States, in the event that I contemplate any exporting of the Collateral (including any technology supplied as part of the Collateral), I shall follow all procedures as required by the U.S. Export Administration Regulations and any related export control laws and regulations promulgated and administered by the government of any country having jurisdiction over the parties hereto or the transactions contemplated herein.

5. **PRESERVATION OF COLLATERAL:** I won't sell or transfer the collateral without your written permission. I won't allow anyone else to have an interest in the collateral except you. I agree, at my own expense, to do everything necessary or expedient to preserve your security interest in the collateral, to defend any action, claim or proceeding affecting the collateral including your security interest; to pay all of your losses, costs, expenses and damages (including attorneys fees equal to at least 20% of all sums owing under this Agreement if permitted under applicable law) in enforcing your rights after the occurrence of a default; and to timely pay all taxes, assessments, license fees and any indirect costs incurred including, but not limited to repair bills, storage charges, towing charges, parking charges and fines or any other public or private charges when levied or assessed against the collateral, this Agreement or any accompanying note (which obligations shall survive the termination of this Agreement), and if a certificate of title is required or permitted by law, I shall obtain such certificate with respect to the collateral reflecting your security interest on the certificate. If I do sell or transfer a Vehicle, this will not release me from my obligations under this Agreement or the applicable Schedule, and you may charge me a transfer of equity fee of $25.00 for any Vehicle that is not a heavy commercial vehicle", or a fee of $50.00 for any Vehicle that is a heavy commercial vehicle. "A "heavy commercial vehicle" means: (a) a truck or tractor that: (i) has a gross vehicular weight of 19,000 pounds or more; and (ii) is not used for personal, family or household use; or (b) a trailer or semi-trailer designed for use in combination with a vehicle described in subparagraph (a). For purposes of this Agreement, a "non-heavy commercial vehicle" is any vehicle that (i) is not used for personal, family or household use; and (ii) does not meet the definition or qualifications for a heavy commercial vehicle.

6. **PREPAYMENT:** I can pay all that I owe early. In the event of such prepayment I may be entitled to a refund credit as provided in Section 348.120 or Section 348.121 of the Texas Finance Code, as applicable. I understand that the refund credit will be reduced by authorized charges for acquisition costs of $25.00 for any Vehicle that is not a heavy commercial vehicle, and $150.00 for any Vehicle that is a heavy commercial vehicle.

7. **BORROWER'S REPRESENTATIONS AND WARRANTIES:** I represent and warrant that: the collateral was delivered to and accepted by me in satisfactory condition; I am justly indebted to you for the full amount of the debt set forth in each Schedule; except for the security interest granted to you under this Agreement and in the Schedule, the collateral is free and will be kept free from all liens, claims, security interests and encumbrances; no financing statements covering the collateral or any proceeds thereof is on file in favor of anyone other than you, but if such other financing statement is on file, I will cause it to be promptly terminated or subordinated; all information supplied and statements made by me in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this Agreement, are and shall be complete and accurate in all material respects; I have full power and authority to enter into this Agreement, and in doing so I am not violating any applicable charters, bylaws, regulations or similar organizational or governing documents, any laws or regulations, or any agreements with third parties; I have taken all action necessary and appropriate to make this Agreement my valid and binding obligation and agreement, enforceable against me in accordance with its terms. If I am an entity, I have notified you in



Initialed for Identification by Borrower JHE    TX Plain Language Loan    Page 1

writing of my state of organization and principal place of business (which is set forth as my address in this Agreement), and I will not, without your prior written consent cause or permit a change in my state of organization or principal place of business. If I am an individual, I have notified you of my principal place of residence (which is set forth as my address in this Agreement), and I will provide you with written notice at least 30 days in advance of any change of my principal place of residence.

8. **CONTINUING OBLIGATIONS.** I agree that the security interest granted by me to you shall continue irrespective of any retaking or redelivery of any collateral and irrespective of the payment of the amount of any debt so long as there are any obligations of any kind, including obligations under guarantees or assignments, owed by me to you, provided, however, upon any assignment of this Agreement by you, the assignee shall thereafter be deemed to be the secured party with all of your rights under this Agreement for all purposes.

9. **INSURANCE AND RISK OF LOSS.** I shall bear all risk of loss of, damage to, or destruction of the collateral. At my own expense, I agree to purchase and maintain throughout the term of this Agreement, insurance against all risk of loss or physical damage to the collateral for the full insurable value, plus liability insurance in at least the amounts shown below, but not less than required by law in all jurisdictions in which the collateral will be used or licensed, plus such other insurance as you may specify from time to time, all in form and amount with insurers satisfactory to you. The insurance must cover your interest in the collateral. The insurer must be authorized to do business in Texas.

| TYPE | AMOUNT |
|---|---|
| Public liability and property damage (comprehensive general and/or automobile liability) | Adequate insurance to cover business activities of<br>GVW Less than 30,001 (Class 1 to 7):  $ 100,000.00<br>GVW 30,001 or Greater (Class 8):  $1,000,000.00<br>combined single limit (comprehensive automobile liability) per occurrence |
| Collision, fire and theft (all risk) | Not less than the actual value of each Vehicle from time to time, with a maximum deductible of $1,000.00 |

For each Vehicle financed under this Agreement or the Schedules, I agree to promptly deliver to you certificates, or if requested, policies of insurance satisfactory to you, each with a standard long-form mortgagee endorsement attached thereto showing loss payable to you or your assigns as loss-payee as their interests may appear. Each policy shall provide that your interest in the policy shall not be invalidated by the acts, omissions, or neglect of anyone other than you, and will contain the insurer's agreement to give at least 30 days prior written notice to you before any non-renewal or cancellation of or any material change in the policy will be effective as to you, whether such non-renewal, cancellation or change is at the direction of me or the insurer. Your acceptance of policies in lesser amounts or risks will not be a waiver of my foregoing obligations. As to your interest in such policies, no act or omission of me or any of my officers, agents, employees or representative shall affect the obligations of the insurer to pay the full amount of any loss.

I assign to you any monies that may become payable under each such policy of insurance, including returned and unearned premiums, up to the amount owing under this Agreement and the Schedules. I irrevocably constitute and appoint you as my attorney-in-fact: (a) to hold each original insurance policy; (b) to make, settle, and adjust claims under each policy of insurance; (c) to make claims for any monies which may becomes payable under such policies and other insurance on the collateral including returned or unearned premiums; and (d) to endorse my name on any check, draft or other instrument received in payment of claims or returned or unearned premiums under each policy and to apply the funds to the payment of the debt owing to you; provided, however, you are under no obligation to do any of the foregoing.

If you apply insurance proceeds to the amount I owe, they will be applied to my payments in the reverse order of when they are due. If my insurance does not pay all I owe, I must pay what is still owed. Once all amounts owed under this Agreement are fully paid, any remaining proceeds will be paid to me.

10. **FINANCING STATEMENT.** If permitted by law, I authorize you to file a financing statement with respect to the collateral signed only by you, and to file carbon, photographic or other reproductions of this Agreement or of a financing statement. At your request, I will execute any financing statements, agreements or documents, in form satisfactory to you, which you may deem necessary or advisable to establish and maintain a perfected security interest in the collateral and will pay the cost of filing or recording the same in all public offices deemed necessary or advisable by you. I also agree to pay all costs and expenses incurred by you in conducting UCC, tax or other lien searches against me or the collateral and such other fees as may be agreed.

11. **YOUR RIGHT TO PERFORM MY OBLIGATIONS.** If I fail to perform any of my obligations under this Agreement, including my failure to purchase insurance or give you proof that I have insurance, or pay all taxes, assessments, license fees and any initial direct costs incurred including, but not limited to repair bills, storage charges, towing charges, parking charges and fines or any other public or private charges when levied or assessed against the collateral, you may pay or perform the obligations, including purchasing the required insurance, but shall not be obligated to do so, for my account to protect your interest or both, at your option, and I shall immediately repay to you any amounts paid by you in such performance, together with an administration fee of $100.00 and interest at the default rate.

12. **DEFAULT.** I will be in default if: (a) I do not pay any amount when due with respect to any debt covered by this Agreement, including any Schedule; (b) I break any promises in this Agreement or fail to perform any of my obligations under this Agreement; (c) I become insolvent, die or cease to do business as an ongoing concern, (d) any of the collateral is lost or destroyed; (e) I make an assignment for the benefit of creditors or take advantage of any law for the relief of debtors; (f) a trustee or receiver is appointed for me or for a substantial part of my property, or I apply for such appointment; (g) you believe in good faith that the prospect of my payment or performance under this Agreement is impaired; (h) there is a material change in my management, ownership or control, (i) if any governmental authority appropriates, confiscates, retains or seizes control, custody or possession of any collateral; (j) if anyone in the control, custody or possession of any of the collateral is accused or alleged or charged (whether or not subsequently arraigned, indicted or convicted) by any governmental authority to have used any of the collateral in the commission of any crime (other than a misdemeanor moving violation); (k) I default under any other agreement or debt obligation between us; (l) it is determined that I have given you any false or materially misleading information regarding my financial condition, or (m) any guarantor, surety or endorser for me dies, ceases to do business as a going concern or defaults in any liability or obligation owed to you or any guaranty obtained in connection with the Loans is terminated or breached. If I default you can exercise your rights and remedies under this Agreement and your other rights under the law.

13. **REMEDIES.** If I default, at your option, with or without notice to me, you may exercise any or all of the following remedies:

    (a)    *Declaration of Default.* You may declare this Agreement to be in default.

    (b)    *Acceleration of Primary Debt.* You may declare all debt owed under this Agreement and/or under any or all of the Schedules immediately due and payable, and demand that I immediately pay all that I owe. You do not have to give me notice that you are demanding or intend to demand immediate payment of all that I owe. . **I understand that I am waiving both my right to receive notice of your intent to accelerate and the actual acceleration of the debt that I owe you evidenced by this Agreement and/or the Schedules.**

    (c)    *Acceleration of Other Debt.* You may declare all other debts then owing by me to you to be immediately due and payable, and demand that I immediately pay all that I owe. You do not have to give me notice that you are demanding or intend to demand immediate payment of all that I owe. **I understand that I am waiving both my right to receive notice of your intent to accelerate and the actual acceleration of any other debts that I owe you.**

    (d)    *Cancellation of Insurance.* You may cancel any insurance and credit any refund to the debt I owe you.



TX Plain Language Loan     Page 2

(e) *UCC Rights and other Rights.* You may exercise all rights and remedies of a secured party under the Uniform Commercial Code (the "UCC") and any other applicable laws, including without limitation: (i) the right to require me to assemble the collateral and deliver it to you at a place to be designated by you which is reasonably convenient to both of us; and (ii) to lawfully enter any premises where the collateral may be without judicial process and take possession of the collateral (this repossession remedy is further described in paragraph 14 below).

(f) *Legal Proceedings.* You may bring legal proceedings against me to enforce the payment and performance of my obligation under this Agreement in any court in the State and venue that we have agreed applies to this Agreement, in the State shown in my address set forth in this Agreement, or otherwise in any court of your choosing that has jurisdiction.

In the event you accelerate the debt and demand that I pay all I owe, you will not charge me for any unearned interest, and to the extent required under applicable law, you will give me credit for finance charges. The inclusion of a trade name or division name in the identifying information for my name in this Agreement shall not limit your right, after the occurrence of a default, to proceed against all of my assets, including those held or used by me individually or under another trade or division name. All of your rights and remedies are cumulative and not alternative.

14. **REPOSSESSION OF VEHICLES.** Our respective rights and duties regarding a repossession of the Vehicles are set forth below:

(a) *Repossession.* If I default, you may repossess any of the Vehicles if you do so peacefully. Any accessory, equipment or replacement part shall stay with the repossessed Vehicle.

(b) *Disposition of Personal Items.* If any of my personal items are in the repossessed Vehicles, you can store them for me and give me written notice at my last address shown on your records within 15 days of discovering that you have my personal items. If I do not ask for these items back within 31 days from the day you mail or deliver the notice to me, you may dispose of them as applicable law allows.

(c) *My Right to Redeem.* If you repossess or take any of the Vehicles, you will tell me how much I have to pay to get them back. If I do not timely pay you to get the Vehicles back, you can sell the Vehicles or take other action allowed by law. My right to redeem ends when the Vehicle is sold or you have entered into a contract for sale or accepted the Vehicle as full or partial satisfaction of my debt.

(d) *Disposition of the Vehicles.* If I do not pay to get any repossessed Vehicles back, you can sell the Vehicles or take other action allowed by law. You will send me notice at least 10 days before you sell the Vehicles. You can use the money you get from selling the Vehicles to pay allowed expenses and reduce the amount I owe. Allowed expenses are expenses you pay as a direct result of taking the Vehicles, holding them, preparing them for sale, and selling them including without limitation your attorneys' fees (equal to at least 20% of the debt owed if permitted by law) and all other legal costs and expenses incurred by you. If any money is left, you will pay it to me unless you must pay it to someone else. If the money from the sale is not enough to pay all I owe, I must pay the rest of what I owe you plus interest. If you take or sell any Vehicles, I will give you the certificate of title and any other document required to by state law to record a transfer of title.

15. **LEGAL LIMITATIONS ON YOUR RIGHTS.** If you do not enforce your rights every time, you can still enforce them later. You will exercise all of your rights in a lawful way. I do not have to pay finance charges or other amounts that are more than the law allows. This provision prevails over all other parts of this Agreement (including the Schedules) and your acts.

16. **INTEREST AFTER DEFAULT.** I agree to pay you, upon default, interest on all sums then owing by me to you at the rate of 18% per annum, if not prohibited by law, otherwise at the highest rate that I can legally obligate myself to pay and/or you can legally collect, until paid in full. All amounts payable hereunder are payable at your address noted above or at such other address as you may specify from time to time in writing.

17. **LATE CHARGE.** If you do not receive my entire payment 15 days after its due date, I agree to pay you a late charge equal to 5% of the past due installment with such late charge not to be less than $25.00.

18. **RETAINED SECURITY INTEREST.** I acknowledge that, to secure all I owe under this Agreement and all of my promises in this Agreement, you have retained a lien on and security interest in the collateral regardless of any retaking and redelivery of the collateral to me.

19. **YOUR DISCLAIMER OF WARRANTIES.** There are no warranties other than those made by the manufacturer of the collateral. I ACKNOWLEDGE AND AGREE THAT YOU HAVE NOT MADE AND ARE NOT MAKING ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE COLLATERAL FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED SAVE AND EXCEPT THOSE, IF ANY, EXPRESSLY SET FORTH IN THIS AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT YOU SHALL NOT UNDER ANY CIRCUMSTANCES BE LIABLE FOR MY LOSS OF ANTICIPATORY OR ACTUAL PROFITS OR FOR MY CONSEQUENTIAL DAMAGES OF ANY TYPE WHATSOEVER.

20. **INTEGRATION AND SEVERABILTY CLAUSE:** This Agreement (and all attachments including the Schedules) contains the entire agreement between you and me relating to the subject transactions. If any part of this Agreement is not valid, all other parts stay valid. Any change in this Agreement must be in writing and both you and I must sign it, and if either of us is an entity, it must be signed by one of our authorized officers.

21. **MAINTENANCE OF LIEN:** I am responsible for assuring that a lien on the collateral in favor of you is properly recorded on any title to the collateral and that such lien remains in full force and effect until all amounts due to you have been paid in full.

22. **MY PRIVACY WAIVER.** You may receive from and disclose to any individual or entities, including, without limitation your parent or any of your affiliates or subsidiaries and any credit reporting agency or other entity whether or not related to you for any purpose, information about my accounts, credit application and credit experience with you, and I authorize any such individuals or entities to release to you any information related to my accounts, credit experience and account information regarding me. This shall be continuing authorization for all present and future disclosures of my account information, credit application and credit experience on me made by you, or any individuals or entities requested to release such information to you.

23. **TRANSFER RIGHTS.** You may transfer this Agreement to another person or entity, and that person or entity will have all of your rights, privileges and remedies under this Agreement. After assignment of this Agreement by you, you will not be the assignee's agent for any purpose and my obligations and liabilities hereunder to the assignee will be absolute and unconditional and will not be subject to any abatement, reduction, recoupment, defense, set-off or counterclaim available to me for breach of warranty or for any other reason whatsoever. I may not transfer or assign my rights, duties and obligations under this Agreement without your written permission.

24. **COLLECTION COSTS.** If you hire an attorney who is not your employee to enforce this Agreement, I will pay reasonable attorneys' fees and court costs as the applicable law allows.

25. **BINDING NATURE OF AGREEMENT.** All of the terms and provisions of this Agreement shall apply to and bind me and my heirs, personal or legal representatives, successors and assigns and shall inure to your benefit and the benefit of your successors and assigns.

26. **MY WAIVERS.** I understand that I have certain rights under the law regarding exemptions that I may claim and the way in which you should give me notice regarding the acceleration of debt that I owe. Notwithstanding those rights, and to the extent permitted by applicable law, by my signature on this Agreement, I waive all exemptions, acceptances, presentment, demand for payment, protest, notice of protest, notice of dishonor, notice of intent to accelerate, notice of acceleration in connection with this Agreement and the underlying debt, and any legal actions to enforce my obligations under this Agreement.

27. **APPLICABLE LAW.** THIS AGREEMENT IS EFFECTIVE WHEN ACCEPTED BY YOU IN YOUR PRINCIPAL PLACE OF BUSINESS IN CONNECTICUT AND FEDERAL LAW AND CONNECTICUT LAW APPLY TO THIS AGREEMENT (save and except for any provisions of Texas law found to be mandatory with respect to the underlying transactions, or Texas statutory provisions specifically referenced in this Agreement).

28. **JURISDICTION AND VENUE.** I submit to personal jurisdiction in the state of Connecticut. I agree that all actions or proceedings arising in connection with this Agreement shall be tried and litigated only in the state and federal Courts located in the state of Connecticut, or, at your sole option, in any

Initialed for Identification by Borrower _JHE_    TX Plain Language Loan    Page 3

other Court in which you shall initiate legal or equitable proceedings and which has subject matter jurisdiction over the matter in controversy. I waive any right I may have to assert lack of in personam jurisdiction, the doctrine of forum non conveniens or to object to venue (or to seek to transfer venue) to the extent any action or proceeding is brought in accordance with this provision.

29. WAIVER OF JURY TRIAL. YOU AND I BOTH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY OR AGAINST EACH OTHER ON, OR IN RESPECT OF, ANY MATTER ARISING OUT OF, RELATING TO OR PERTAINING TO THIS AGREEMENT OR THE INTERPRETATION, BREACH, ENFORCEMENT OR SUBJECT MATTER HEREOF, THE RELATIONSHIP BETWEEN US AS DEBTOR AND SECURED PARTY AND/OR ANY CLAIM OF INJURY OR DAMAGE FROM ANY OTHER RELATIONSHIP BETWEEN US. EITHER OF US ARE AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF OUR WAIVER OF THE RIGHT TO TRIAL BY JURY.

30. WARNINGS AND NOTICES TO BORROWER:

   (a) *LIABILITY INSURANCE.* THIS AGREEMENT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.
   (b) *COMPLETE AGREEMENT.* I WILL NOT SIGN THIS AGREEMENT BEFORE I READ IT OR IF IT CONTAINS BLANK SPACES. I AM ENTITLED TO A COPY OF THE AGREEMENT I SIGN. UNDER THE LAW, I HAVE A RIGHT TO PAY OFF IN ADVANCE ALL THAT I OWE AND UNDER CERTAIN CONDITIONS MAY BE ENTITLED TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGES. I WILL KEEP THIS AGREEMENT TO PROTECT MY LEGAL RIGHTS.
   (c) *ACKNOWLEDGEMENT OF RECEIPT OF AGREEMENT.* I AGREE TO THE TERMS OF THIS AGREEMENT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. I CONFIRM THAT BEFORE I SIGNED THIS AGREEMENT, YOU GAVE IT TO ME, AND I WAS FREE TO TAKE IT AND REVIEW IT.
   (d) *CONSUMER CREDIT COMMISIONER NOTICE.* To contact Hitachi Capital America Corp. about this account, call 866-718-4222. This Agreement is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, Texas 78705-4207; 800 538-1579; (512) 936-7600, and can be contacted relative to any inquiries or complaints.
   (e) *SIGNATURES REQUIRED.* THIS AGREEMENT IS NOT VALID UNTIL YOU AND I SIGN IT.
   (f) I hereby consent to you obtaining a credit report on me and any personal and/or corporate guarantors of me at the time of execution hereof and semi-annually in the event of a default under this agreement or any other obligations of me to you and any guarantees therefor. Copies of this executed agreement transmitted by facsimile transmission, email or signatures generated through electronic signature/documentation technology shall be considered originals for all purposes.

Dated 1/21/2016 I hereby acknowledge receipt of an exact copy of this Agreement

| LENDER / SECURED PARTY: | BORROWER: |
|---|---|
| **HITACHI CAPITAL AMERICA CORP.** | **JAMS TRANSPORTATION, INC.** |
| | Name of Individual(s), corporation or partnership. Give trade name, if any, after name. |
| Signature: *Andrea Hofer-Yusi* | Signature: *[signature]* |
| Name: Andrea C. Hofer-Yusi | Name (print): Jacobo Maldonado |
| Title: Documentation Manager | Title: |
| Dated: 1/29/16 | Dated: 01/21/2016 |
| | If corporation, authorized officer must sign and show corporate title. If partnership, general partner must sign. If LLC, authorized Manager or Member must sign. |
| | By executing above, Buyer acknowledges receipt of an exact copy of this Agreement |

Initialed for identification by borrower: *[initials]*   TX Plain Language Loan   Page 4